USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/14/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ZOILO SANCHEZ, Individually and on Behalf of
All Others Similarly Situated,

                                **Plaintiffs,**                      **18-CV-02199 (SN)**

                              -against-                          **OPINION AND ORDER**

**MALECON RESTAURANT CORP., et al.,**

                                **Defendants.**
-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

       Plaintiff Zoilo Sanchez worked as a waiter at Malecon Restaurant, located at 4141 Broadway, in Manhattan (the "Restaurant"), from approximately June 2014 until August 2017. He alleges that he was paid a flat shift rate regardless of hours worked, and that he regularly worked more than 40 hours in a week. He further alleges that he was required to share tips with non-tipped workers, and that he was not provided with the statutory notices upon hiring and when he was paid. He seeks to represent a collective, under the Fair Labor Standards Act, of all current and former tipped employees, employed at the Restaurant, from August 6, 2015, to the date of this Order. Defendants oppose the motion for conditional certification of the collective or, in the alternative, seek to modify the scope of the proposed collective and proposed Notice. Plaintiff's motion is GRANTED in part and DENIED in part.

## BACKGROUND

       Sanchez started working at the Restaurant in approximately June 2014 and left in August 2017. Zoilo Sanchez Declaration, ¶ 6, at ECF No. 31-1 ("Sanchez Decl."). Although he began as a waiter's assistant, after a few weeks he was promoted to a waiter. Id. at ¶ 7. He worked as a waiter for the duration of his employment. Sanchez contends that he worked 50-60 hours per

week. Occasionally he covered other workers' shifts, and on those weeks, he worked 69 hours per week. Id. at ¶ 8. Sanchez was initially paid $40 per shift; in 2016, Defendants raised the rate to $60 per shift. Id. at ¶ 11. There was no premium for overtime hours. Id. at ¶ 12. Sanchez spoke with other waiters who confirmed that they were paid the same rate. Id. at ¶¶ 10, 15. Sanchez observed other waiters being paid—always in cash—and saw that they were paid the same way that he was. Id. at ¶ 13. He also observed the shift schedule and saw that other workers were scheduled to work more than 40 hours per week. Id. at ¶ 16.

Sanchez and other waiters at the Restaurant were required to pool their tips. Id. at ¶ 14. Waiters had to share their tips with non-tipped workers, including busers, bartenders, and the delivery dispatcher. Sanchez was never provided with a written notice regarding his rate of pay or the Restaurant's tip policy. Id. at ¶¶ 18, 19. He never observed any other waiter receive any written notice regarding these policies. Id. at ¶ 18.

Defendant Pablo Gomez submitted an affidavit in opposition to Sanchez's motion. Pablo Gomez Affidavit, ECF No. 34-1 ("Gomez Aff."). Gomez is a shareholder and officer of Defendant Malecon Restaurant Corp., which operates the Restaurant. Gomez Aff. ¶ 1. Waiters at the Restaurant were scheduled for 8.5-hour shifts, with a half-hour unpaid break, five days per week. Id. at ¶ 4. Gomez contends that waiters worked 40-hour weeks and were paid based on the legally-allowed rate for tipped employees. Id. Waiters who worked over 40 hours were paid an overtime premium of 1.5 times their hourly rate. Id.

## DISCUSSION

### I. Legal Standards

Under the FLSA, a plaintiff may seek certification to proceed as a collective action, thus allowing other "similarly situated" employees the opportunity to join the litigation. 29 U.S.C.

§ 216(b); see also Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010). While FLSA § 216(b) does not reference certification explicitly, district courts have long utilized their discretionary power to provide notice to potential collective members. "Certification," in fact, is somewhat of a term of art: rather than creating a class of plaintiffs for a FLSA collective action, it serves as a "case management tool" to facilitate notice to *potential* class members. Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010) (citing Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).

While the FLSA does not define "similarly situated," it is widely recognized that the standard for conditional collective action certification is not a stringent one. Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 336 (S.D.N.Y. 2010); Iglesias-Mendoza v. La Belle Farm. Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). In this Circuit, there is generally a two-stage certification process for FLSA collective actions. Myers, 624 F.3d at 554–55 (2d Cir. 2010). The first stage—the conditional certification at issue here—requires only a "modest factual showing" based on the "pleadings and affidavits" that the putative class members were "victims of a common policy or plan that violated the law." Cardenas v. AAA Carting, 12-CV-7178 (VB), 2013 WL 4038593, at *1 (S.D.N.Y. Aug. 9, 2013) (quoting Sbarro, 982 F. Supp. at 261). "In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims." Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013). In the second stage of the framework, where the court has a "fuller record" to work with, a defendant can move to decertify if discovery reveals that the claimants are not similarly situated. Myers, 624 F.3d at 555.

This burden is necessarily "a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." Id. Nevertheless,

the burden is not non-existent and "cannot be satisfied simply by unsupported assertions or with conclusory allegations." Sanchez v. JMP Ventures, L.L.C., No. 13-CV-7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (internal quotations omitted). Accordingly, while courts in this Circuit have routinely granted conditional collective certification on thin records, including those "based solely on the personal observations of one plaintiff's affidavit," see, e.g., Hernandez v. Bare Burger Dio Inc., No. 12-CV-7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases), they have also required some "concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions." Mata v. Foodbridge LLC, No. 14-CV-8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015). Therefore, courts have withheld conditional collective certification when submissions did not have any allegations regarding the specific hours worked or amounts paid to other employees. See, e.g., She Jian Guo v. Tommy's Sushi Inc., No. 14-CV-3946 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014).

## II.     Application

### A.  Conditional Certification of the Collective

Sanchez satisfies the "modest showing" that he is similarly situated to other waiters who worked at the Restaurant. See Mendoza v. Ashiya Sushi 5, Inc., No. 12-CV-8629 (KPF), 2013 WL 5211839, at *4 (S.D.N.Y. Sept. 16, 2013) (at the conditional certification stage, the Court should draw all inferences in favor of the plaintiff). Sanchez testifies that "all waiters" were paid under the same unlawful pay practices that he was, that he discussed these pay practices with other waiters and observed them being paid in this manner, and that he also observed waiters working overtime and schedules that would require overtime hours. These details and

observations are more than generalized claims. Sanchez provides a stable foundation for his allegations and offers sufficient details to lend them credibility.

While Defendant Gomez challenges Sanchez's claims about the pay practices at the Restaurant, the Court's duty at this stage is not to resolve the wage-and-hour claims, but simply to determine whether this lawsuit can resolve the claims of multiple claimants. I find that it can.

To the extent he seeks to represent any employee other than waiters at the Restaurant, Sanchez has failed to establish that he is competent to do so.[1] Sanchez represents that he worked only at the Restaurant and not at any other Malecon location. And he offers no testimony with respect to the pay practice at any other location or even whether pay practices were company-wide. For similar reasons, Sanchez is competent to represent only waiters, and not other "tipped employees." To the extent tipped employees might include bartenders, busers, or delivery people, Sanchez offers no information regarding their pay, hours of work, or other conditions of employment.

Sanchez may, however, represent current and former waiters who worked at the Restaurant for the period three years from the filing of the complaint. Defendants argue that the certification period should be limited in two ways. First, it should be limited to two years, not three; second, it should end when the Sanchez's employment ended, in August 2017.

Under the FLSA, the statute of limitations is three years for willful violations and two years for non-willful violations. 29 U.S.C. § 255(a). When willfulness is disputed, courts typically apply the three-year limitations period in defining the scope of a collective action. See,

---

[1] Plaintiff's motion seeks conditional certification of a collective of all "current and former tipped employees of defendant Malecon Restaurant Corp., d/b/a Malecon," Plf. Br. at 1. His proposed order, however, defines the collective as all "current and former tipped employees employed by Malecon Restaurant at their 4141 Broadway location," that is, at the Restaurant. ECF No. 30-1.

e.g., Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013). The Court follows this practice here as Sanchez has made a prima facie showing that he was not paid on an hourly basis and was never paid overtime, all in willful violation of the law.

Second, Defendants request that the Court terminate the certification period when Sanchez left the Restaurant (August 2017). Defendants provide no legal authority to limit the certification period to the dates when Sanchez worked. Defendants argue that such a ruling is "consistent with caselaw in this Circuit," and cite Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012). Winfield, however, does not stand for this proposition. Rather, it adopts the near-universal practice in this Circuit to send notification to prospective opt-in plaintiffs employed within three years of the date the complaint was filed. Id. Defendants' argument that Sanchez cannot establish a policy that existed after he left the Restaurant is unavailing. Indeed, Defendant Gomez did not testify in his affidavit that the pay practices changed after Sanchez left. And Sanchez testified in his declaration that "even [the waiters] who had been around longer than the others" had been paid under the same practice, suggesting that the Restaurant's pay practices do not frequently change.

Accordingly, consistent with the practice in this District, the Court authorizes that the notice be sent to all current and former waiters of the Restaurant who were employed within three years of the date the complaint was filed.[2]

---

[2] A number of courts in this Circuit "have concluded that the determination of tolling issues for . . . eventual opt-ins should be dealt with after the notice and opt-in period has concluded" and as such "routinely approve notice periods going back three years from the filing of the complaint even though that time period can substantially exceed the statutory limitations period, which runs three years from the filing of an opt-in consent . . . . This approach thus leaves room for opt-ins to pursue a request for tolling based on their own specific circumstances." Barrett v. Forest Labs., Inc., No. 12–CV–5224 (RA)(MHD), 2015 WL 6437494, at *1–2 (S.D.N.Y. Oct. 5, 2015) (collecting cases). The Court likewise "decline[s] to limit the scope of the notice based on an assumption that future opt-ins . . . will be unable to demonstrate a basis for tolling." Id.

### B. The Proposed Notice

Sanchez requests that the Court direct opt-in forms to be mailed to his counsel; whereas Defendants argue that the notice should be mailed to the Clerk of Court. Defendants argue that requiring that the notice be sent to Plaintiff's counsel "impinges upon potential opt-in plaintiffs' right to select their own counsel."

"Courts in this District are split on this issue." Martin v. Sprint/United Mgmt. Co., 15-CV-5237 (PAE), 2016 WL 30334, at *18 (S.D.N.Y. Jan. 4, 2016). Some have required "consent forms to be mailed to the Court because of concerns that a contrary ruling might discourage opt-in plaintiffs from retaining their own counsel . . . and others [have] approv[ed] notices that required consent forms be sent to plaintiffs' counsel." Hernandez v. Fresh Diet Inc., No. 12-CV-4339 (ALC)(JLC), 2012 WL 5936292, at *2 (S.D.N.Y. Nov. 21, 2012) (internal citations omitted); see also Martin, 2016 WL 30334, at *2 (noting this split but also stating that "[t]he majority of courts, however, have directed opt-in plaintiffs to mail the consent forms to plaintiffs' counsel"); She Jian Guo, 2014 WL 5314822, at *5 (stating the same and that "[d]oing so is particularly appropriate here because the Notice explicitly advises potential opt-in plaintiffs that they may consult or retain another attorney . . . mitigating concerns that putative class members may be discouraged from retaining their own counsel").

Requiring that Notices be returned to the Clerk of Court is unnecessarily burdensome. Any concern about undue influence can be readily addressed by advising in the Notice that opt-in plaintiffs are free to retain their own lawyer if they choose (as the Proposed Notice does) or may represent themselves (which the Proposed Notice does not do).

Sanchez requests that potential opt-in plaintiffs be granted 45 days to file their opt-in forms; Defendants argue that the opt-in period should be limited to 30 days. Defendants' only

argument to deviate from the more typical 45-day period is that the opt-in class is likely to be small. This is not a sufficient justification to narrow the opt-in period. Potential opt-in plaintiffs will have 45 days to file their Consent to Become a Party Plaintiff form.

Defendants object to the posting of the Notice at the Restaurant at a location where current waiters can observe it. Defendants raise concern that the posting of this Notice will confuse employees and disrupt operations. For now, Defendants are not required to post the Notice. Instead, they must provide all contact information, including last known addresses, telephone numbers and email addresses, to all current and former waiters employed at the Restaurant from March 12, 2015. With respect to current waiters, Defendants must provide them with a copy of the Notice within the first 15 days of the opt-in period.

Finally, the Court adopts the textual changes proposed by the Defendants in Section E of their memorandum of law. In addition, the Plaintiff must modify the Notice to clearly state that the members of the collective are limited to waiters employed from March 12, 2015, to the present. A revised draft Notice shall be filed with the Court for approval no later than January 22, 2019.

## CONCLUSION

Plaintiff Sanchez's motion for conditional certification of a FLSA collective is GRANTED in part and DENIED in part. The Clerk of Court is directed to terminate the motion at ECF No. 30.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   January 14, 2019
         New York, New York