# SAMUEL & STEIN

ATTORNEYS AT LAW

38 WEST 32ND STREET, SUITE 1110, NEW YORK, NY 10001
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

**DAVID STEIN**　　　　　　　　　　August 5, 2019　　　　　　　　ADMITTED IN
dstein@samuelandstein.com　　　　　　　　　　　　　　　　　　　NY, NJ, PA, IL, DC

**VIA ECF**

Hon. Sarah Netburn, U.S.M.J.
United States District Court
Southern District of New York
40 Foley Square, Room 430
New York, NY 10007

　　　　Re:　**Sanchez, et al. v. Malecon Restaurant Corp., et al.**
　　　　　　*Docket No. 18-cv-2199 (SN)*\

Dear Magistrate Judge Netburn:

　　We represent plaintiff Zoilo Sanchez in the above-captioned matter and submit this letter to the Court with the consent of Gregory Capone, Esq., counsel for defendants, in accordance with the Court's Order of July 2, 2019, (as amended), for the Court's assessment of and approval of the settlement agreement reached by the parties. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter as Exhibit A, and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel.

<u>Background</u>

　　Mr. Sanchez filed his complaint[1] in this matter on June 29, 2018. The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") for minimum wage and overtime violations, as well as related claims under the New York Labor Law for failure to pay spread of hours premiums, failure to provide wage notices and failure to provide wage statements.

　　Specifically, Mr. Sanchez has alleged that he was employed as a waiter at one of defendants' Manhattan restaurants from June 2014 through August 2017. He alleged that he worked roughly 51½ hours per week, and was paid on a shift basis - $40 per shift, or $200 per week, to start, and then in 2016 $60 per shift, or $300 per week. These amounts were sub-minimum wage — and he alleged that defendants did not provide the required disclosures to entitled them to claim the benefit of the tip credit. According to Mr. Sanchez, there were no

---

[1] At the time, Mr. Sanchez had a co-plaintiff, but that individual, Erick Espinal, decided to drop his claims in mid-suit and he was dismissed from the case on June 8, 2018.

overtime premiums or spread of hours premiums, and he was paid in cash and given no record of his pay or hours. Nor was he provided with a pay notice when he was hired, as required by the Wage Theft Prevention Act..

Based on these facts, Mr. Sanchez calculated his total estimated maximum damages at $86,000, which was comprised of $21,000 in actual and liquidated minimum wage damages, $52,000 in actual and liquidated overtime damages, $3,000 in actual and liquidated spread of hours damages, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or paystubs.

### Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith – the parties agreed to settle Mr. Sanchez's claims against defendants for a total of $72,500. The final settlement amount is 84% of plaintiff's maximum possible recovery, and so we believe this to be a fair resolution to this matter, due to *bona fide* disputes about the value of his claims and to the risks and delays attendant with continuing the litigation.

As an initial matter, defendants contended that Mr. Sanchez actually started his employment in December 2014 (rather than June 2014), and ended his full-time employment a year earlier than he alleged, in August 2016. While Mr. Sanchez was firm about the start date of his employment, he was shaky at his deposition as to exactly when his employment ended; defendants might well have been able to establish that his employment tenure was shorter than he said. Defendants also contended that Mr. Sanchez did not work as many weekly hours as he alleged, claiming he only worked 41 hours per week. Defendants' had some records that superficially supported this claim; while plaintiff might well have been able to undermine these records at trial, it would have required a trial and would necessarily have been a gamble.

By agreeing to settle at this juncture, Mr. Sanchez was able to gain a significant portion of what he could have recovered at trial, while saving trial expenditures, and without the risks attendant with trial. Thus, Mr. Sanchez decided to accept defendants' offer.

### FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4)

the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiff suggests that they weigh in favor of settlement approval. The total gross settlement amount, as noted *supra*, is 84% of Mr. Sanchez's maximum possible recovery. And even after attorneys' fees, he will be receiving complete recovery of his claimed actual and liquidated FLSA damages, plus spread of hours damages and Wage Theft Prevention Act damages. He will receive these funds without running any risk or having to prove his claims. Settlements resulting in a much lower percentage of potential recovery are routinely approved. *See, e.g., Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(25% of potential recovery reasonable); *Larrea v. FPC Coffees Realty Co.*, 2017 WL 1857246 at *2 (S.D.N.Y. May 5, 2017)(net settlement of 43% of FLSA plaintiff's maximum recovery is reasonable). Moreover, he will receive the payment in a lump sum, with no installment plan required.

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiff and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiff are experienced wage-and-hour litigators, and the negotiations were conducted on an arm's length basis. Moreover, prior to entering into the settlement agreement, Mr. Sanchez, in consultation with counsel, thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the

conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks

Finally, other factors present do not weigh against a settlement. Plaintiff no longer works for defendants, so there is no risk he will be subject to the same treatment in the future. There are no other parties to this case who will be affected by this settlement. (As noted above, a co-plaintiff dropped out of the case over a year ago. Moreover, the case was certified as a potential collective action, and no other employee elected to join.) Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiff, we will be reimbursed for out-of-pocket expenses of $2,151.25 (filing fee, service of process, interpreters' fee, deposition costs, and subway fare)[2] and will retain 1/3 of the net settlement (i.e., an additional $23,449.58) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted).

Moreover, the figure represents an attorneys' fee amount of approximately 85% percent of our lodestar, a figure far below those commonly approved in FLSA contingency litigation. *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)(approving a multiplier of 2.28 and noting that a "multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.") And plaintiffs' counsel should not be penalized for litigating the case efficiently. *See, e.g., Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (*quoting McDaniel v. County. of Schenectady*, 595 F.3d 411, 418 (2d. Cir. 2010)) (holding that the percentage method is appropriate because it "avoids the lodestar method's potential to 'create a

---

[2] The Court can take judicial notice of the filing fee; receipts for service of process and interpretation and deposition costs are attached as Exhibit C.

disincentive to early settlement.'") And in this case, the degree of success achieved by plaintiff was high.

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure reflects the reasonableness of that percentage; it was calculated as follows:

| Attorney | Class | Rate[3] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $400 | 34.40 | $12,645.00 |
| David Nieporent | Senior Associate | $325 | 50.70 | $14,868.75 |
| **TOTAL** | | | **85.10** | **$27,513.75** |

A copy of our time records, maintained contemporaneously and entered into Timeslips software, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New York since 2000, and I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of record in more than 350 such cases. In addition to being admitted in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New Jersey, as well as having been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

These rates are well within the norm of billing rates for cases of this nature in this district. See, e.g., *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) ("Courts in this district have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450" per hour (citations omitted)); *Kadden v. VisuaLex, LLC*, 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) (finding rate of $375 per hour to be reasonable for a "well-respected solo practitioner with approximately twenty-five years of legal experience with a focus on labor and employment law and litigation"); *Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *7 (S.D.N.Y. Sept. 16, 2014) (approving of requested rate of $400 per hour for "2003 graduate of Hastings College of Law with over ten years of experience specializing in wage and hour litigation"). And, indeed, we have been awarded fees of precisely the above rates by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016) and Judge Bricetti in *Lu v. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018), and Judge Torres in *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 16-cv-6040 (AT), Docket Entry 84 (September 28, 2018), and Judge Oetken in *Zhu v. Salaam*

---

[3] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125, and travel time was billed at half the regular rate. In addition, work done solely on behalf of Mr. Espinal was no-charged, as was work done for a belated reply brief that was ultimately stricken by the court.

*Bombay, Inc., at al.*, 16-CV-4091 (JPO), 2019 WL 76706 (January 2, 2019). And in the Eastern District, where the rates are a bit lower, we were awarded fees of $375 and $325 in a wage and hour case, *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (N.Y.E.D. May 24, 2018).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

Very truly yours,

David Stein

Enc.

cc: Gregory Capone, Esq. (via ECF)